Zimmerman, J.
 

 A purely legal question is presented for determination. Is tbe relator entitled to receive from tbe respondent tbe bonds pledged by Tbe Union Trust Company as security for deposit of relator’s funds when tbe indebtedness of the relator to tbe trust company is in a sum larger than tbe amount of such deposit? Or, putting tbe proposition in another way, can a deposit of public funds, representing moneys derived from taxation, be applied by a bank against past due obligations owed to it by tbe political subdivision wbicb is tbe owner of such deposit?
 

 The" relator argues with much force that under Section 5 of Article XII of tbe Constitution of Ohio, and certain specified statutes, tbe tax funds on deposit in Tbe Union Trust Company were appropriated and set apart for tbe specific purposes directed by tbe laws and authority through wbicb they were collected, and cannot be used in any other way; that any other disposition thereof would constitute a misapplication and would be unlawful. Hence, under no hypothesis are they subject to be used in reduction of tbe indebtedness owed Tbe Union Trust Company.
 

 Tbe respondent is equally insistent that tbe relator is in no different position in respect to these funds than an individual or a private corporation, and that tbe general rules relating to set-off govern.
 

 
 *196
 
 In the case of
 
 Fidelity & Casualty Co.
 
 v.
 
 Union Savings Bank Co.,
 
 119 Ohio St., 124, 162 N. E., 420, it was claimed that state funds deposited in a bank according to law are entitled to priority of payment upon the insolvency of the bank. However, in refusing priority, this court took the position that in depositing such funds the state was acting in a proprietary capacity, and that the relationship of borrower and lender was created between the bank and the state, the transaction being no different than if it had been between two individuals.
 

 Again, in the case of
 
 Ward, Treas.,
 
 v.
 
 Fulton, Supt. of Banks,
 
 125 Ohio St., 382, 181 N. E., 815, this court held that where a “county treasurer lawfully deposits county moneys in a bank, and takes security therefor, such deposit becomes general in character, and may be treated and used by the bank as a part of its general funds. Hence, when the bank is taken over by the state superintendent of banks, the latter is without authority to grant the county treasurer priority in payment as against general creditors of the bank.
 

 An examination of numerous authorities convinces us that these holdings express the majority view.
 

 Thus, in
 
 State
 
 v.
 
 First State Bank of Alliance,
 
 122 Neb., 502, 240 N. W., 747, 79 A. L. R., 576, denying priority of payment, the court stated:
 

 “Intervener contends that county funds, derived from the collection of taxes, are trust funds in the hands of the county treasurer; that a bank receiving same for deposit, with such knowledge, must account for the same as trust funds, and that claims for such trust funds are entitled to payment before the payment of claims of other depositors.”
 

 Answering this argument, the court continues:
 

 ‘ ‘ Clearly the statute authorizes the county treasurer to place the county funds in his hands in depositary banks on- general deposit and provides for taking security therefor. The title to the moneys or other
 
 *197
 
 credits deposited passes to the bank and may be used by it as other funds deposited in the bank. It follows that the bank did not hold the deposit as a trust fund, * * *.”
 

 The rule of most general adoption áppears to be that where there is an authorized general deposit of public funds in a depository, the transaction is in effect a loan creating the relationship of debtor and creditor, and such public funds are not entitled to preference under the claim that they constitute a trust. 18 Corpus Juris, 579; 3 Ruling Case Law, 555, 521; 22 Ruling Case Law, 223;
 
 Phillips
 
 v.
 
 Yates Center National Bank,
 
 98 Kan., 383, 158 P., 23, L. R. A., 1917A, 680;
 
 New Amsterdam Casualty Co.
 
 v.
 
 Robertson,
 
 129 Ore., 663, 278 P., 963, 64 A. L. R., 1396, 1401;
 
 State
 
 v. Mc
 
 Graw,
 
 74 Mont., 152, 240 P., 812;
 
 Denny
 
 v.
 
 Thompson,
 
 236 Ky., 714, 33 S. W. (2d), 670;
 
 U. S. Fidelity & Guaranty Co.
 
 v.
 
 Carter,
 
 161 Va., 381, 170 S. E., 764.
 

 Our next inquiry is, what is the situation, as in the instant case, where a depository containing public funds derived from taxation seeks to apply these funds on a matured obligation owed it by the depositor of such funds?
 

 The answer to this question involves the principle of set-off, which is thus defined in 24 Ruling Case Law, at page 792: “Set-off, both at law and in equity, must be understood as that right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other, to set-off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered. ’ ’
 

 It is said in 5 Ohio Jurisprudence, at page 456: “Ohio statutes secure the right of set-off between parties sustaining the relation of debtor and creditor between whom there are cross demands, and those existing between banks and their customers are not ex
 
 *198
 
 cepted from its operation. A bank may, therefore, apply a deposit of its debtor, or such portion thereof as may be necessary, to the payment of the debt due, * * & ? ?
 

 And see 8 Ruling Case Law, 488; 7 Corpus Juris, ■ 653.
 

 What has been said applies unquestionably to individuals ; but is the rule the same when public bodies are involved? Our answer is in the affirmative.
 

 The first case to which it is desired to call attention is
 
 United States
 
 v.
 
 Bank of the Metropolis,
 
 40 U. S. (15 Pet.), 377, 392, 10 L. Ed., 774, 779, where the Supreme’ Court of the United States said:
 

 “When the United States, by its authorized officer, become a party to negotiable paper, they have all the rights, and incur all the responsibility of individuals who are parties to such instruments. We know of no difference, except that the United States cannot be sued. But if the United States sue, and a defendant holds its negotiable paper, the amount of it may be claimed as a credit, if, after being presented, it has been disallowed by the accounting officers of the treasury ; and if the liability of the United States upon it, be not discharged by some of those causes which discharge a party to commercial paper, it should be allowed by a jury, as a credit against the debt claimed by the United States.”
 

 The Supreme Court of Pennsylvania in the case of
 
 Georges Township
 
 v.
 
 Union Trust Co.,
 
 293 Pa., 364, 143 A., 10, held that a bank in which the public funds of a township are placed in -a general account takes them without responsibility as to the appropriations made thereof by the taxing authorities, and may treat them like any other funds. Therefore, such funds may be charged with a municipal order, in the bank’s possession for collection, in the same manner as if they belonged to an individual or a corporation.
 

 In
 
 Board of Drainage Commissioners
 
 v.
 
 City Nat
 
 
 *199
 

 ional Bank of Paducah, Ky.,
 
 231 Ky., 670, 22 S. W. (2d), 94, the board of drainage commissioners of McCracken county had on deposit in the City National Bank of Paducah, moneys of the district, collected through taxation, amounting to $17,886.78. The drainage district owed the bank $8,539.01, with interest. The court allowed the bank to charge its debt against the deposit, holding that the board occupied no different position than any other depositor. It was further held that the bank was not required to learn from whence the money came; nor did it hold the money as trustee for the taxpayers.
 

 Also, sustaining the principle that a deposit of public funds can be applied by a bank to the payment of a matured obligation due the bank, are the cases of
 
 Hemphill
 
 v.
 
 Florida National Bank
 
 (5th C. C. A.), 30 F. (2d), 892, and
 
 Gray
 
 v.
 
 School District of Borough of Brownsville
 
 (3rd C. C. A.), 67 F. (2d), 141.
 

 The latest and strongest case found supporting the position of relator is that of
 
 Township Committee of Piscataway Township
 
 v.
 
 First National
 
 Bank, 111 N. J. Law, 412, 168 A., 757, in which the'court decided that a bank holding an over-due improvement note of a municipality could not take the municipality’s general bank account in payment thereof, for the reason that such account “is, in reality, a trust fund into which the current revenues are placed for disposition in accordance with the appropriations previously made *. The bank can no more take these funds for a purpose for which they were not dedicated than it could take trust funds to pay the'debt of the individual who happened to be trustee.”
 

 There is a vigorous dissenting opinion in the last-named case, in accord with the majority holdings cited above.
 

 In the present case the funds of the relator, no matter from what source derived, when deposited in The
 
 *200
 
 Union Trust Company under the depository agreement, lost their identity and became a part of the general funds of the trust company, which it could use accordingly. The ordinary relationship of debtor and creditor was created between the bank and the relator, and the rights of the relator were no greater and no different than those of an individual depositor. Therefore, the trust company was entitled to apply the deposit of relator in part satisfaction of the past due obligations which the relator owed it. The funds of the delator were no more sacred than those of any other depositor.
 

 Having failed to establish its right to the bonds in question, the writ prayed for by the relator will be denied.
 

 Writ denied.
 

 Weygandt, C. J., Allen, Stephenson, Jones, Matthias and Bevis, JJ., concur.